IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNATHAN D. WISHNESKI,

        Plaintiff,

v.                                       CV 08-0348 WJ/WPL

DOÑA ANA COUNTY; ARAMARK
CORRECTIONAL SERVICES, LLC;
NANCY ONTIVEROS; AND
ELLEN ORRWHITTEMAN,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Johnathan D. Wishneski has been jailed at the Doña Ana County Detention Center since April 2007.  (Doc. 29 Ex. A.)  He was initially held on charges of possession of paraphernalia, concealing his identity, receiving or transferring a stolen vehicle, and being a fugitive from justice.  (*Id.*)  A jury found him guilty on some or all of these charges in February 2008.  (Doc. 29 at 2; Doc. 55 Ex. D.)[1]

In March 2008, Wishneski filed suit in this Court against over twenty defendants affiliated with the Detention Center.  By my count, the complaint raises at least fourteen different claims,

---

[1] Wishneski contends that he is a pretrial detainee because he has not yet been sentenced and that pretrial detainees have more rights than inmates who have been convicted and sentenced.  In the Tenth Circuit, a person ceases being a pretrial detainee once his guilt is formally adjudicated.  Inmates awaiting sentencing are treated the same as inmates already sentenced.  *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990); *accord Tilmon v. Prator*, 368 F.3d 521, 523-24 (5th Cir. 2004) (applying *Berry*'s analysis to claim of punitive detention).  In any event, with the exception of his claim regarding administrative segregation, the same standards govern Wishneski's claims whether he is a pretrial detainee or a sentenced inmate.  *See Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106-07 & n.12 (10th Cir. 2005) (access to courts and administrative segregation), *vacated in part*, 449 F.3d 1097 (10th Cir. 2006); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (medical care); *Lopez v. LeMaster*, 172 F.3d 756, 759 & n.2 (10th Cir. 1999) (failure to protect); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (conditions of confinement).

ranging from inadequate medical care to unacceptable noise levels. Judge Herrera issued a memorandum opinion and order, dismissing several of the claims as not cognizable and dismissing most of the defendants because no factual allegations were made directly against them. Wishneski filed an "Answer and Argument to Memorandum Opinion and Order," in which he attempts to amend the complaint to correct the deficiencies noted by Judge Herrera.

Wishneski has also filed a plethora of motions, including a motion for a temporary injunction. I ordered Defendants to file a *Martinez* report to address the allegations in the motion for temporary injunction. They have done so, and Wishneski has responded. In addition, Defendant Ellen Orr Wittman has filed a motion to dismiss or stay the proceedings, to which Wishneski has also responded.[2]

The following are my recommendations regarding all of these documents.

### MOTIONS REGARDING THE TIMING OF THE *MARTINEZ* REPORT

Wishneski has filed a "Request for Injunction Based on Non-Compliance" (Doc. 26), a "Motion for Order of Judgement Based on Non-Compliance" (Doc. 38), and a "Motion in Objection to Time Extension" (Doc. 39). In these filings, Wishneski objects to the Defendants' failure to file their *Martinez* report by the original due date and to the extension of time that I granted for them to file the report. As a sanction, he requests that the temporary injunction and all other relief he seeks in this suit be granted.[3]

---

[2] This defendant's last name is spelled "Orrwhitteman" in the caption because that is the way Wishneski spelled it in his motion for temporary injunction. In this PFRD, I will spell the name as she does in her motion to dismiss.

[3] In his Request for Injunction Based on Non-Compliance (Doc. 26), Wishneski additionally claims that Orr Wittman's discontinuance of his pain medication is causing his blood pressure to be abnormally high. He seeks an order prohibiting Orr Wittman from having access to him. Because Orr Wittman no longer works

The *Martinez* report was filed ten days after the original due date.  Regardless of whether the basis for the extension was valid, the short delay does not in itself warrant granting Wishneski the ultimate relief he seeks in this suit.  Therefore, I recommend that these motions be denied.

### MOTION REGARDING NEW EVIDENCE

Wishneski has filed a "Motion Requesting Hearing Due to Overwhelming New Evidence." (Doc. 43.)  In this motion, he claims that he has uncovered new evidence that will conclusively show that the medical department at the Detention Center will not provide him proper and adequate medical treatment.  The motion does not disclose the new evidence, but asserts that because the new evidence is "very, very, sensitive in nature" it should "only be brought to the courts [sic] attention through means of a hearing."  (*Id.* at 2.)

I see no need to conduct a hearing on Wishneski's bare bones assertion of newly discovered evidence.  Further, I fail to see how disclosing the allegedly sensitive information in a motion would be meaningfully different from disclosing it during a hearing, which would be conducted on the record in open court.  This motion should be denied.

### MOTIONS REGARDING ACCESS TO THE COURTS

Wishneski has filed a "Motion Asking for Emergency Relief," in which he seeks an order requiring Detention Center officials to supply him with enough black-ink pens, legal-style paper, and "mailing fees" for "all legal material."  (Doc. 46 at 2.)  In his Request for Injunction Based on Non-Compliance (Doc. 26), discussed above, Wishneski also seeks an order compelling the Detention Center to provide him with the necessary pens, paper, and postage for this litigation.  He states that he receives only eight sheets of paper, one pen, and four envelopes per month.  Wishneski claims in

---

at the Detention Center, this request is moot.

his Request for Injunction Based on Non-Compliance that he has to sell his breakfast to obtain funds to buy additional writing materials and postage.  In the Motion Asking for Emergency Relief, Wishneski claims that he is no longer able to sell his breakfast because he has been placed in administrative segregation.

The right of access to the courts is not violated absent an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996).  To satisfy the actual injury standard, a plaintiff must show that his claim was not frivolous and that the reason for its failure was logically related to the impediment created by the defendants. *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005).  Moreover, the right of access to the courts is just that—a right of access.  It does not encompass the ability to litigate effectively once in court. *Lewis*, 518 U.S. at 354; *see also id.* at 351 (suggesting that the actual injury requirement could be established by showing that a prison's legal assistance system caused a complaint to be dismissed or stymied the ability even to file a complaint).

To facilitate the right of access to the courts, "indigent inmates must be provided at state expense with paper and pen to draft legal documents[,] with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977), *overruled on other grounds by Lewis*, 518 U.S. 343.  However, states may impose reasonable restrictions that balance the rights of prisoners with budgetary considerations. *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978); *see also Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980) (holding that the right of access does not encompass unlimited free access to a photocopying machine).

In *Twyman*, the Tenth Circuit considered a prison policy requiring a prisoner to have less than $5.00 in his inmate account to qualify for free postage.  For prisoners meeting this qualification, free postage was limited to eight letters, legal and non-legal, per month. *Twyman*, 584 F.2d at 358.  Once

a prisoner had nothing in his account, free postage was allowed for legal mail in excess of eight letters. Prisoners were not permitted to receive stamps through the mail from outsiders and were required to purchase all their envelopes for both legal and non-legal mail. *Id.* The court held that this policy did not violate the plaintiff's right of access to the courts because he had not had a case dismissed or any other court sanctions imposed because he had to wait to mail something. *Id.* at 359. The court concluded that *Bounds* does not require a state to pay the postage for every item of legal mail that every prisoner wishes to send. *Id.* The court noted, "To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face." *Id.*

Under *Lewis*, *Simkins*, and *Twyman*, Wishneski has not demonstrated any actual injury resulting from the limitations on writing materials and postage. He does not even specify what the limit on postage is. He has faced no repercussions from this Court as a result of the limitations.[4] I also note that Wishneski has filed a profusion of documents in this proceeding, including letters, requests for subpoenas, and more than ten motions. *See Payne v. Friel*, 266 F. App'x 724, 726 (10th Cir. 2008) (affirming district court's holding that "the volume of material that [the prisoner] was able to file in this case demonstrated that he could not state a claim for denial of meaningful access to the courts").[5]

---

[4] Wishneski apparently has at least one case pending in state court as well. He has not identified any repercussions that he faced in state court because of the limitations.

[5] Moreover, it is undisputed that while this case was pending Wishneski has used some of his paper and ink to write a love letter to one of the nurses at the Detention Center.

### DOCUMENTS ATTEMPTING TO REPLEAD CLAIMS IN THE ORIGINAL COMPLAINT

Before a responsive pleading is filed, a plaintiff has the right to amend his complaint once. FED. R. CIV. P. 15(a)(1)(A).  After that, the plaintiff must obtain leave of court to file an amended complaint unless the opposing party consents.  FED. R. CIV. P. 15(a)(2).  In this case, no Defendant has filed a responsive pleading.  However, Wishneski filed an "Addendum of Defendants to the Original Complaint," in which he attempted to add defendants and correct errors in the original complaint. (Doc. 12.)  In her memorandum opinion and order, Judge Herrera relied on this document to add Nancy Ontiveros as a defendant.  (Doc. 18 at 4.)  Thus, Wishneski has in effect amended his complaint once.  Additional attempts to amend the complaint therefore require leave of court.

Leave to amend a complaint may be denied because of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  Amending a complaint is futile if the amended complaint would be subject to dismissal for any reason.  *See Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

As noted above, Wishenski filed an Answer and Argument to Memorandum Opinion and Order, in which he attempts to fix certain problems in his complaint noted by Judge Herrera.  The memorandum opinion and order cannot properly be "answered," but because Wishneski is proceeding *pro se*, I construe this document as a motion for leave to amend the complaint.[6]

---

[6] On October 9, 2008, Wishneski filed an "Addendum to Plaintiffs [sic] Response to Memorandum and Opinion Document 18."  (Doc. 62.)  Nothing in this addendum alters my analysis.

In his Answer and Argument to Memorandum Opinion and Order, Wishneski elaborates on his claim of improper classification.  Judge Herrera dismissed this claim, interpreting it as no more than a contention that the classification procedures were "incompetent."  (Doc. 18 at 3, 5.)  In the complaint, Wishneski alleged that violent repeat offenders were housed with first-time non-violent offenders and that he was being bullied by other prisoners in his pod.  He claimed that he reported the situation to "classification" three times.  His reports included the allegation that a prisoner was smacked for urinating in the wrong toilet.  "[Y]et classification chose to do nothing . . . ."  (Doc. 1 at F-7, F-8.)  Wishneski now alleges that on June 1, 2008, he was "attacked and blindsided by a federal inmate," causing him bruises, abrasions, and a broken nose.  (Doc. 37 at 2.)  He claims that Officer Reyes and Lieutenant Mandoza were made aware of the potentially volatile situation before June 1, 2008.

Wishneski's new allegations, combined with the allegations in the complaint, appear sufficient to state a claim for failure to protect.  *See Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) ("To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." (internal punctuation omitted)).  I see no reason for denying leave to add a failure to protect claim against Officer Reyes and Lieutenant Mandoza.  Wishneski attempted to amend within a month of being advised of the deficiency in his complaint, and no other party will be unduly prejudiced.

Wishneski requests in his Answer and Argument to Memorandum Opinion and Order that his claims be reinstated against all the defendants in his complaint.  With one exception, I recommend

that this request be denied because he still has not alleged the requisite personal involvement as explained by Judge Herrera.  (*See* Doc. 18 at 4.)  The one exception is Jose Rosales.

In his complaint, Wishneski alleged that he was not given adequate or timely medical treatment for a problem with the foreskin of his penis.  He now alleges that Rosales is a doctor at the Detention Center and that because of Rosales's "intentional procrastination," he endured an eight-month wait for a circumcision, during which time he suffered from bleeding and pain.  (Doc. 37 at 6-7.)  As with the failure to protect claim, I see no reason for denying leave to reinstate Rosales as a defendant.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (stating that prison medical professionals who serve as gatekeepers for other medical personnel may be held liable under the deliberate indifference standard if they delay or refuse to fulfill that gatekeeper role).

Wishneski's complaint contains a claim for denial of access to the courts.  He has now filed a "Motion for Immediate Injunction and Addendum to the Complaint" (Doc. 55), in which he attempts to tie three previously dismissed defendants to this claim.  He faults Captain Garcia, Major Roach, and Chris Barela for his lack of access to legal information, copies, and notaries.  I do not recommend that these individuals be reinstated as defendants because Wishneski has failed to state a claim for denial of access to the courts.

As explained above, the right of access to the courts is not violated absent an "actual injury." *Lewis*, 518 U.S. at 351-53.  Wishneski's motion refers to civil rights suits and habeas petitions, but he does not allege that his efforts to pursue either type of case failed because of his lack of access to legal materials, copies, or notaries.  Plainly, his civil rights suit—this case—is pending.  His state habeas petition is also pending and counsel has been appointed to represent him, thus eliminating his need for access to legal materials. *See United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999)

("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library.").[7]

Wishneski's complaint also includes a claim regarding inadequate dental care.  Among other things, he asserts that an extraction is the only treatment offered for a cavity.  Wishneski has now filed a "Motion for Immediate Injunction" (Doc. 63), in which he states under penalty of perjury that he has a cavity and requests an order mandating that the tooth be filled rather than pulled.  I will consider Wishneski's averment that he has a cavity at a later date when I evaluate the merits of the case.

### MOTIONS ATTEMPTING TO ADD NEW CLAIMS

Wishneski's remaining motions seek to add new claims and new defendants.  Wishneski seems to presume that he may continually update his suit every time he believes that an official at the detention center violates his constitutional rights.  This presumption is wrong.[8]

New claims may be added to a suit through an amended or supplemental complaint.  An amended complaint repleads the allegations in the original complaint or adds facts or claims that arose before or contemporaneous with the allegations in the original complaint, whereas a supplemental complaint sets forth transactions, occurrences, or events that happened after the original complaint was filed.  *See* FED. R. CIV. P. 15; *Flaherty v. Lang*, 199 F.3d 607, 613 n.3 (2d Cir. 1999).  As with

---

[7] In his complaint, Wishneski contends that he was entitled to access a law library to assist his appointed defense attorney at his trial.  In light of *Taylor*, Wishneski is clearly mistaken.

[8] "[P]rison officials . . . should be free from second-guessing or micro-management from the federal courts."  *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  Accordingly, this Court will not intervene in routine matters of jail administration.  Although some of Wishneski's claims (for example, the claim regarding his foreskin) appear on their face to raise serious issues and thus to raise colorable constitutional claims, several other claims (for example, the claim regarding the variety of food served at the Detention Center) are practically frivolous.  As described above, Wishneski feels that he does not have adequate access to writing materials and postage to pursue his legal claims.  One way to alleviate these problems would be for him to limit his filings to serious issues.  Furthermore, time spent by the Court in wading through non-meritorious issues only delays the resolution of serious issues.

his attempts to amend the complaint, described above, Wishneski must obtain leave of court to file a supplemental complaint. FED. R. CIV. P. 15(d). Because Wishneski is proceeding *pro se*, I construe his motions as motions for leave to amend or supplement the complaint.

For the most part, Wishneski's remaining motions assert claims that arose after the original complaint was filed, but in some respects they may assert claims that arose before or contemporaneous with the original complaint. The standard used in deciding whether to grant leave to supplement a complaint is the same as the standard that is used in deciding whether to grant leave to amend. *Fowler v. Hodge*, 94 F. App'x 710, 714 (10th Cir. 2004); *see also Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (stating that trial courts have broad discretion concerning supplemental pleadings and leave should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants). Because the standard is the same, I find it unnecessary to decide whether each claim should be characterized as an amendment or a supplement.

In his "Emergency Motion for Injunctive Relief" (Doc. 50), Wishneski claims that he was placed in administrative segregation on August 27, 2008 without a hearing, in violation of his right to due process. He asserts that Lieutenant Porter ordered his segregation to retaliate against him for filing this suit and another suit in state court. Wishneski requests that Lieutenant Porter be added as a defendant. Additionally, he seeks an injunction barring Detention Center officials "of all conduct unbecoming of an officer." (*Id.* at 4.)

A protected liberty interest may arise from prison placement decisions and conditions of confinement that are "atypical and significant . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Wishneski has only been in administrative segregation for fewer than seven weeks, and he has not explained how the conditions there are atypical and

significant when compared with the conditions endured by other inmates. The Emergency Motion for Injunctive Relief provides no information about the conditions of administrative segregation. In another motion, Wishneski suggests that inmates in administrative segregation are only allowed recreation every other day and then only for one hour inside, with no direct sunlight. (Doc. 55.) These allegations are insufficient to support a claim that Wishneski had a right to due process before being placed in administrative segregation. *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002) (stating that segregation for fewer than seventy-five days might fail as a matter of law to be atypical and significant); *see also Clayton v. Ward*, 232 F. App'x 827, 832 (10th Cir. 2007) ("Because Clayton's administrative segregation [for twenty-six days] was of a relatively short duration and he fails to assert any facts in support of his conclusory allegation that confinement in H-unit was an atypical and significant hardship, we conclude that the district court did not err in dismissing his suit.").[9]

However, the claim of retaliation meets the standard for allowing supplementation. The motion to supplement was filed less than a month after the events in question and there is no indication of prejudice to other parties. The claim does not appear to be futile. *See Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006).

Wishneski has also filed a "Motion for Immediate Hearing Concerning Injunctive Relief for Further Discontinuation of Medication and a [sic] Addendum to the Original Complaint for Further Allegations, and, Amended Relief." (Doc. 51.) In this motion, he seeks to add Dr. Carp and Dot Smith as defendants. Wishneski claims that Dr. Carp discontinued his Thorazine after this suit was

---

[9] Wishneski should not be precluded from seeking leave to supplement his complaint with this due process claim by filing a motion for leave containing adequate factual allegations.

filed.   He claims that "sensitive new information" (presumably the information mentioned in Document 43) concerns Smith.  (*Id.* at 11.)  Additionally, in a Motion for Immediate Injunction, he alleges that Smith, who is the medical director at the Detention Center, instructed the medical staff "not to provide nothing" for Wishneski.  (Doc. 63 at 3.)

The allegations against Dr. Carp, read liberally, appear sufficient to support a claim for deliberate indifference to Wishneski's serious medical needs.  Wishneski alleges that he was taking Thorazine for his anxiety disorder and that Dr. Carp discontinued this medicine even though Wishneski told him that the medicine had helped him feel mentally stable for the first time in thirty-five years.  *Compare Olsen*, 312 F.3d at 1316 (indicating that plaintiff who had been diagnosed with and treated for obsessive compulsive disorder for fifteen years may have a serious medical need), *with Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (holding that plaintiffs' alleged sexual addiction was not a serious medical need where they claimed that the condition eroded their self-esteem to the point of apathy and reinforced fear and feelings of differentness, but they had not been diagnosed by a doctor as needing treatment).  There has been no delay in making these allegations and no prejudice to other parties is apparent.  Also, given that Wishneski's claims for deliberate indifference to his serious medical needs are pending, Smith should be added as a defendant based on the allegation that she personally directed the medical staff to provide inadequate care to Wishneski.

Wishneski has filed a Motion for Immediate Injunction and Addendum to Complaint.  (Doc. 55.)  In this motion, he seeks to add several new claims against new defendants.

The motion first alleges that Wishneski was denied his recreation privileges three times for passing legal work to other inmates.  He believes that these actions were based on an unwritten rule

that inmates in administrative segregation cannot pass anything to each other.  These allegations do not state a claim for relief.  Wishneski does not have a protected interest in providing legal representation to other inmates.  *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990); *see also Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  Moreover, "the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of [legal] assistance . . . : for example, by limitations on the time and location of such activities . . . ."  *Johnson v. Avery*, 393 U.S. 483, 490 (1969).

Next, Wishneski complains that since being placed in administrative segregation he has no opportunity for recreation in direct sunlight.  This deprivation of outdoor recreation is not sufficiently serious to be a constitutional violation.  *Compare Ajaj v. United States*, No. 07-1073, 2008 WL 4192738, at *8 (10th Cir. Sept. 15, 2008) (unpublished) (upholding denial of outdoor recreation for one year), *with Fogle*, 435 F.3d at 1260 (indicating that denial of outdoor recreation for three years might be a constitutional violation).

Wishneski further complains that certain officers make inmates "turn and face the wall." (Doc. 55 at 6.)  He considers this to be cruel and unusual punishment.  This is not a constitutional violation.  *Cf. Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002) (describing prisoner's objection to use of a waist belt and leg chains as "the stuff of nickels and dimes").

Wishneski next argues that he should be allowed to be present during "shakedowns" or room searches.  (Doc. 55 at 7.)  He states that officials send the entire pod "to the yard" when they search rooms.  (*Id.*)  Again, this is not a constitutional violation.  *See Bell v. Wolfish*, 441 U.S. 520, 555-57 (1979).

13

Wishneski raises two issues regarding his state habeas petition.  First, he contends that state officials are denying him a free copy of a trial transcript for use in a state habeas proceeding.  An indigent prisoner seeking post-conviction collateral relief does not have a right to a free copy of court transcripts and documents unless he has demonstrated that he has a non-frivolous claim.  *Nortonsen v. Larimer County Dist. Court*, 178 F. App'x 783, 783 (10th Cir. 2006) (citing *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992)).  Wishneski has not alleged that he has a non-frivolous habeas claim requiring access to the trial transcript.

Second, Wishneski complains about the state judge's failure to act on his habeas petition.  He claims that he filed the petition on March 6, 2008.  To his knowledge, the only action the judge had taken as of September 20, 2008 was to appoint counsel.[10]  The state judge has absolute immunity against this complaint.  *See Chavez v. City of Albuquerque*, No. 99-2359, 2000 WL 1508835, at *3 (10th Cir. Oct. 10, 2000) (unpublished).

And last, Wishneski complains about the Detention Center's food and its "indigent commissary package."  (Doc. 55 at 11.)  He states that the food is on a two-week rotation and that four or five times a week he is served a "Mex plate," consisting of a bean and meat mixture with tortillas or tortilla chips.  According to Wishneski, the food should be on a four-week rotation.  He further contends that the indigent commissary package "is a joke" because it contains three stamped envelopes, six sheets of paper, one flex pen, one small bar of soap, one toothbrush, one tube of toothpaste, and a .35 ounce package of shampoo.  (*Id.*)  This amount of shampoo is supposed to last

---

[10] Attached to Wishneski's motion is an April 4, 2008 letter from the trial court clerk, stating that his case "does not have a Writ of Habeas Corpus filed."  (Doc. 55 Ex. C.)  Another undated letter from the court notes that counsel was appointed on July 30, 2008.  (*Id.* Ex. E.)

for one month, yet it "is smaller than the complimentary package that you get at any decent hotel." (*Id.* at 12.)

Of course Wishneski is not at a hotel, he is in jail.  While he is there, officials must provide him with humane conditions of confinement— including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "[T]his minimum standard does not impose constitutional liability on prison officials for every injury suffered by an inmate." *Id.*  To become a constitutional violation, "[t]he official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Wishneski's complaints about the food and the commissary package fall far short of showing that his minimal necessities are not being met. *Cf. Rogers v. Holt*, 49 F. App'x 231, 232 (10th Cir. 2002) (concluding that complaint regarding denial of recreation and substitution of sack lunches for five days was frivolous); *Davison v. Stout*, 44 F. App'x 404, 405-07 (10th Cir. 2002) (upholding summary judgment on complaint alleging deprivation of toothpaste, a toothbrush, toilet paper, and soap over a three-day period); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding that one shower per week is constitutionally sufficient).

## MOTION TO DISMISS

Defendant Ellen Orr Wittman, P.A., has filed a "Motion for Dismissal Without Prejudice or, In the Alternative, For Stay of Proceedings."  (Doc. 36.)  She contends that she is a qualified healthcare provider under the New Mexico Medical Malpractice Act, which provides that "[n]o malpractice action may be filed in any court against a qualifying health care provider" before the claim has been considered by the state Medical Review Commission.  N.M. STAT. ANN. § 41-5-15(A).  This

15

Court has held that an inmate civil rights suit is not a "malpractice claim" within the meaning of the Act. *Cordray v. County of Lincoln*, 320 F. Supp. 2d 1171, 1173-74 (D.N.M. 2004). I read Wishneski's filings in this case to state constitutional claims against Orr Wittman. Following *Cordray*, these claims do not fall within the ambit of the Act. Therefore, I recommend that the motion to dismiss be denied.

## MOTION FOR TEMPORARY INJUNCTION

In his "Motion for Immediate Temporary Injunction" (Doc. 17), Wishneski claims that Orr Wittman permanently terminated his physical therapy sessions and used unconventional medical techniques, specifically "witchcraft," on him without his consent. Wishneski also seems to state that Orr Wittman stopped providing his medicine. He contends that his condition is deteriorating daily due to his lack of access to medication and physical therapy. The motion does not specifically describe the type of injunctive relief sought, but presumably Wishneski seeks to have his physical therapy and medicine reinstated and the witchcraft terminated.

To be entitled to a temporary injunction, Wishneski must prove: 1) a substantial likelihood of success on the merits of the case; 2) irreparable injury if the injunction is denied; 3) the threatened injury to him outweighs the injury to the other party if the injunction is granted; and 4) the injunction is not adverse to the public interest. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). Because a temporary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *See id.*

### *Physical Therapy*

In his motion, Wishneski claims that Orr Wittman permanently terminated his physical therapy on July 10, 2008. Defendants state in their *Martinez* report that Orr Wittman prescribed a new

16

physical therapy regimen on that date. (Doc. 29 at 8.)[11]  The *Martinez* report shows that Wishneski

has bursitis in his left shoulder.   In October 2007, an outside doctor, Dr. Watson, instructed

Wishneski to follow an exercise program using a Thera-Band.  (*Id.* Ex. G, I.)  Because the Thera-

Band was considered to be contraband at the Detention Center, Wishneski was supposed to be

allowed to go to the Detention Center's medical office to do his exercises.  (*Id.* Ex. T.)  On May 10,

2008, Wishneski gave a love letter to Janet Olona, one of the Detention Center's nurses, while at the

medical office for his physical therapy.  (*Id.* Ex. T, U, V.)  Detention Center officials then ordered

that a staff member take the Thera-Band to Wishneski's cell three times a day so that he could do the

exercises there.  (*Id.* Ex. T.)  On May 24, 2008, Wishneski advised Olona that this was not

happening, so they again made arrangements for him to do the exercises at the medical office.  (*Id.*)

But, according to Olona's affidavit, "it was difficult to conduct a professional medical clinic when

other inmates were in the office with Mr. Wishneski talking to the nurses and the other inmates" and

"sometimes Mr. Wishneski was unable to complete his exercises because other inmates were being

seen during clinic hours." (*Id.*)  Therefore, Orr Wittman gave Wishneski a new set of exercises that

he could do in his cell without the Thera-Band.  (*Id.*)

    Wishneski seems to dispute Olona's claim that it was problematic to have him do his exercises

in the medical office.  Otherwise, he does not dispute any of the facts recited above from the *Martinez*

report.[12]  He asserts, however, that Dr. Watson  specifically designed the Thera-Band exercises for

---

[11] The *Martinez* report was filed by Doña Ana County and Nancy Ontiveros.

[12] In his responses to the *Martinez* report, Wishneski complains that he was not allowed to do his exercises on a regular basis even before the love letter incident.  Although these complaints may be relevant to the ultimate disposition of a deliberate indifference claim based on improper implementation of his physical therapy, they are irrelevant now.  At this point, I am only considering whether a temporary injunction should issue based on the termination of his physical therapy.

his injury.  He contends that the exercises ordered by Orr Wittman "weren't specifically designed to target the problem area."  (Doc. 47 at 3-4.)  He also points out that Orr Wittman is only a physician's assistant, whereas Dr. Watson is an orthopedic surgeon.

To prevail on a claim for inadequate medical care under the Eighth Amendment, a prisoner must establish that the defendants acted with deliberate indifference to his serious medical needs. *Mata*, 427 F.3d at 751; *see also Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  The deliberate indifference standard may be met when prison officials intentionally interfere with prescribed medical treatment.  *Estelle*, 429 U.S. at 104-05.  Based on the allegations in Wishneski's motion, it appeared that he might have a claim for deliberate indifference based on prison officials' termination of prescribed physical therapy.

However, the deliberate indifference standard is not met when a prisoner simply disagrees with a prescribed course of treatment.  *See, e.g., Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001).  Nor is it met when one medical professional refuses to follow the advice of another medical professional.  *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *see also Boyett v. County of Washington*, No. 06-4315, 2008 WL 2483286, at *6 (10th Cir. June 19, 2008) (holding that physician's assistant was not deliberately indifferent in replacing medicine prescribed by outside doctor with another medicine because the prescribed medicine, a narcotic, was not allowed in the jail).

It is undisputed that Orr Wittman decided to replace the exercises prescribed by Dr. Watson with other exercises.  Although Wishneski believes the exercises prescribed by Dr. Watson were better, this belief is insufficient to establish deliberate indifference.  Therefore, it is not substantially

likely that Wishneski will prevail on a deliberate indifference claim for termination of the physical therapy prescribed by Dr. Watson.

Wishneski argues that he will suffer irreparable injury if the injunction is denied because he will need surgery if the original physical therapy is not reinstated.  Dr. Watson's notes indicate that if physical therapy and medicine do not alleviate Wishneski's pain, he may be a candidate for surgery. (Doc. 29 Ex. G, I, N.)  But there is nothing to indicate that Wishneski is more likely to need surgery as a result of the original exercises being replaced by the new exercises.  Since the new exercises can be performed by Wishneski without any cooperation from others, it is more likely that he will actually be able to complete the exercises.

As noted above, "prison officials . . . should be free from second-guessing or micro-management from the federal courts."  *DiMarco*, 473 F.3d at 1342; *see also Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.").  Given that Wishneski is receiving some physical therapy, it would be adverse to the public interest to order Defendants to provide him with the exact therapy that he demands.  Moreover, considering the other three factors, Wishneski has not shown that any threatened injury to him outweighs the injury to the public interest if the injunction is granted.

### *Medicine*

Wishneski's motion for temporary injunction does not identify the medicine that Orr Wittman refused to provide.  According to Olona's affidavit, Wishneski agreed to stop taking MS Contin, a form of morphine, on June 2, 2008.  (Doc. 29 Ex. T.)  On June 23, 2008, Orr Wittman discontinued

the MS Contin and placed him on the opiate withdrawal protocol.  She prescribed other medicines to alleviate Wishneski's withdrawal symptoms and pain.  (*Id.*)

Wishneski denies that he agreed to stop taking MS Contin.  I accept that denial for purposes of ruling on the motion for temporary injunction.

Exhibits to the *Martinez* report support the other allegations in Olona's affidavit.  On June 23, 2008, the following medicines were prescribed for Wishneski: clonidine, Vistaril, Flexeril, Toradol, and Ultram.  In the following days, Celebrex, naproxen, Thorazine, Tofranil, lisinopril, Valium, prazosin, and tramadol were prescribed.[13]  (*Id.* Ex. T.)

The record also demonstrates that Wishneski has problems with narcotics.  In his complaint, Wishneski criticizes Defendants for causing him to become addicted to oxycodone in February and March 2008.  (Doc. 1 "Exhibit pg 16" and "Exhibit pg 22.")  The medical orders in Wishneski's chart contain the following notation by Dr. Rosales on February 7, 2008: "Do not crush meds; if pt caught cheeking meds again I will D/C some or all medications."  (Doc. 29 Ex. T.)  An April 6, 2008 notation by Dr. Rosales states, "D/C Morphine, pt selling medication."  (*Id.*)  I also note that on January 2, 2008 Dr. Watson stated his impression that Wishneski had "exaggerated symptoms."  (*Id.* Ex. L.)

Thus, regardless of Wishneski's consent, it appears that Detention Center officials had a legitimate reason for discontinuing his morphine.  Medications were prescribed for the withdrawal

---

[13] According to Drugs.com, naproxen is used for minor pain; Toradol is for the short-term treatment of moderate-to-severe pain; Ultram, the brand name of tramadol, is a narcotic-like pain reliever that is also used to treat moderate-to-severe pain; Celebrex is a pain reliever that is typically prescribed for arthritis; and Flexeril is a muscle relaxer.  Vistaril treats anxiety and itching, Tofranil is an anti-depressant, Thorazine treats mood or mental disorders, and Valium treats anxiety disorders and withdrawal symptoms.  Clonidine, lisinopril, and prazosin are blood pressure medications.

symptoms, and other pain medications were prescribed to replace the morphine.   Under these circumstances, it is not substantially likely that Wishneski could prevail on a claim of deliberate indifference based on the discontinuance of the morphine.   *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician . . . , is . . . insufficient to establish a constitutional violation."); *see also Hood v. Prisoner Health Servs.*, 180 F. App'x 21, 25 (10th Cir. 2006) (holding that replacement of narcotic pain reliever, which prisoner preferred, with non-narcotic medicine was not a constitutional violation).

Wishneski contends that he is in pain and that the pain increases his blood pressure.   As noted above, however, pain medication and blood pressure medication have been prescribed for him.   He has not demonstrated irreparable injury or, considering the County's interest in managing its detention facility, that the harm to him outweighs the injury to the public interest if the injunction is granted.

### Witchcraft

It is undisputed that the unconventional medical technique was performed on Wishneski only one time and only by Orr Wittman.[14]   It is also undisputed that Orr Wittman no longer works at the Detention Center.   Wishneski does not contend that Orr Wittman performed the technique after he refused to consent to it.   Instead, he admits that he consented to the technique, but contends that Orr Wittman did not fully explain what it entailed.   Now that he understands what it entails, presumably he will not consent to it again if another medical provider suggests it.   Given that Orr Wittman is no

---

[14] According to Olona's affidavit, Orr Wittman attempted to treat Wishneski's pain with a non-touch Japanese technique called "Seimer." (Doc. 29 at T.)  She claims that the treatment took no more than ten minutes and consisted of Orr Wittman making gestures over his body. (*Id.*)  Wishneski suggests that Orr Wittman chanted to a supernatural entity.  He claims that he found this offensive to his Christian religious beliefs.

longer at the Detention Center, and that Wishneski is not currently being subjected to the technique against his will, I conclude that his request to enjoin performance of the technique on him is moot.

CONCLUSION

For the reasons stated above, I recommend that:

1) Wishneski's Request for Injunction Based on Non-Compliance (Doc. 26), Motion for Order of Judgement Based on Non-Compliance (Doc. 38), Motion in Objection to Time Extension (Doc. 39), Motion Requesting Hearing Due to Overwhelming New Evidence (Doc. 43), Motion Asking for Emergency Relief (Doc. 46), Motion for Immediate Injunction and Addendum to Complaint (Doc. 55), and Motion for Immediate Temporary Injunction (Doc. 17) be DENIED;

2) Wishneski be allowed to amend or supplement his complaint to add the following claims and defendants—

        A) a failure to protect claim against Officer Reyes and Lieutenant Mandoza,

        B) a deliberate indifference claim against Jose Rosales,

        C) a retaliation claim against Lieutenant Porter,

        D) a deliberate indifference claim against Dr. Carp, and

        E) a deliberate indifference claim against Dot Smith;

3) in all other respects, Wishneski's Emergency Motion for Injunctive Relief (Doc. 50), Motion for Immediate Hearing Concerning Injunctive Relief for Further Discontinuation of Medication and a Addendum to the Original Complaint for Further Allegations, and, Amended Relief (Doc. 51), and Motion for Immediate Injunction (Doc. 63) be DENIED; and

4) Orr Wittman's Motion for Dismissal Without Prejudice or, In the Alternative, For Stay of Proceedings (Doc. 36) be DENIED.

22

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE