IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOHNATHAN D. WISHNESKI**,

    Plaintiff,

vs.                                                                No. 08cv348 MCA/WPL

**DOÑA ANA COUNTY; ARAMARK
CORRECTIONAL SERVICES, LLC;
NANCY ONTIVEROS; and ELLEN
ORRWHITTEMAN,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the magistrate judge's Proposed Findings and Recommended Disposition (PFRD) and several documents filed by Plaintiff Johnathan D. Wishneski.

**I. BACKGROUND**

    Wishneski filed a civil rights complaint against over twenty defendants affiliated with the Doña Ana County Detention Center. The Court dismissed several of Wishneski's claims as not cognizable and dismissed most of the Defendants because no factual allegations were made directly against them. (Doc. 18.) Thereafter, Defendant Ellen Orr Wittman filed a motion to dismiss or stay the proceedings and Wishneski filed ten motions, including a motion for a temporary injunction. (Doc. 17, 26, 36, 38, 39, 43, 46, 50, 51, 55, 63.) The magistrate judge ordered the Defendants to file a *Martinez* report limited to the allegations in the motion for a temporary injunction. (Doc. 20.)

    On October 14, 2008, the magistrate judge issued his PFRD regarding all of the pending motions. (Doc. 64.) He recommended that Orr Wittman's motion be denied. He further

recommended that Wishneski be allowed to amend or supplement his complaint to add claims. The magistrate judge recommended that Wishneski's motions be denied in all other respects. (*Id.* at 22.)

The next day, Wishneski filed a "Motion for Court Ordered Relief Based on Non-Compliance of Doctors Orders [sic]." (Doc. 65.) In this motion, Wishneski asserted that Detention Center officials were continuing to prevent him from doing his physical therapy. He also asserted that although he was supposed to see his outside specialist, Dr. Watson, every two-to-three weeks, he had not been allowed to see him that often. He requested an order requiring the Detention Center to provide him "with whatever therapy Dr. Watson sees fit and that [he] continue to see [Dr. Watson] on a 2 week basis." (*Id.* at 6.)

On October 22, 2008, Wishneski filed an "Answer to Proposed Findings and Recommended Disposition; Request for time Extension for Answer; and Request for 90 day Time Extension for a complete Amended Supplemental Complaint." (Doc. 70.) At the same time, he filed a "Supplemental Response to Proposed Findings and Recommended Disposition." (Doc. 71.) In these documents, Wishneski indicated that he wanted to object to the PFRD and to prepare an amended complaint connecting specific defendants to the constitutional violations that he alleged had been committed against him. To this end, Wishneski requested that the Court subpoena the Detention Center's duty rosters, as well as all of his medical records. He also requested that he be allowed ninety days from the date the subpoenas were issued to file his objections and the amended complaint. He claimed that he needed the additional time because he had recently been sentenced and he thought it would be difficult for him to complete the objections and amended complaint during and immediately after his anticipated transfer to state prison. Additionally, he did not have sufficient writing materials.

On October 28, 2008, Wishneski filed two documents. The first document is a letter addressed to me, stating that Wishneski received the denial of his requested time extension on October 24 and indicating that he was about to complete his response to the PFRD. (Doc. 74.) The second document is entitled "Plaintiffs Response to Judge Lynch's Proposed Findings and Recommended Disposition; and Amended Supplemental Civil Rights Complaint Persuant to 42 U.S.C. § 1983 [sic]." (Doc. 75.)

On November 12, 2008, Wishneski filed a notice of change of address, showing that he has been transferred to Central New Mexico Correctional Facility. (Doc. 77.) The Defendants have filed no objections to the PFRD.[1]

## II. DISCUSSION

In his "Motion for Court Ordered Relief Based on Non-Compliance of Doctors Orders," Wishneski requests that Detention Center officials be required to comply with Dr. Watson's orders regarding physical therapy and frequency of visits. After filing this motion, Wishneski was transferred from the county facility to a state prison. An inmate's request for injunctive relief generally becomes moot upon his transfer from one place of incarceration to another. *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1259 (D. Kan. 1999) (citing cases). There is no reason to believe that Wishneski will be returned to the Detention Center. *See McAlpine v. Thompson*, 187 F.3d 1213, 1216-18 (10th Cir. 1999) (discussing application of capable-of-repetition-yet-evading-review doctrine to parolees); *see also Koetting v. Noble County Bd. of County Comm'rs*, 12 F. App'x 796, 798, 799 n.3 (10th Cir. 2001) (holding that pretrial detainee's request for injunctive relief against

---

[1] As noted above, Orr Wittman filed a motion to dismiss. Aramark Correctional Services, LLC, filed an answer. (Doc. 68.) Although an attorney filed a notice of appearance on behalf of Doña Ana County and Nancy Ontiveros on August 13, 2008 (Doc. 25), these defendants have not filed a responsive pleading.

jail officials was rendered moot by his transfer to state prison because there was no reasonable expectation that he would be returned to jail). Accordingly, this motion is moot.

Turning to the documents filed by Wishneski on October 22 and October 28, the Court does not know why Wishneski believes his request for extension of time was denied. No order to that effect has been entered by the Court.[2] However, "Plaintiffs Response to Judge Lynch's Proposed Findings and Recommended Disposition; and Amended Supplemental Civil Rights Complaint Persuant to 42 U.S.C. § 1983" constitutes Wishneski's objections to the PFRD along with requests to amend or supplement his complaint. Because the objections were timely filed, it is not necessary to address the requests for relief contained in the documents filed on October 22. The Court will proceed to consider Wishneski's objections and requests to amend or supplement.

Wishneski begins by objecting to the magistrate judge's treatment of his claims of denial of access to the courts. Wishneski contended in two of his previous motions that the Detention Center did not provide him with sufficient writing materials or postage to pursue his legal claims in court. (Doc. 26, 46.) In another motion, he sought to amend his complaint to add a denial of access to the courts claim against three defendants. (Doc. 55.) The magistrate judge recommended that these motions be denied because Wishneski failed to allege an "actual injury" under *Lewis v. Casey*, 518 U.S. 343 (1996), which requires a showing that a nonfrivolous claim failed as a result of an impediment created by prison officials. (Doc. 64 at 3-5, 8-9.)

Although Wishneski continues to complain about the failure to provide him with writing materials, postage, and legal information, he only identifies one result of these failures that could

---

[2] Perhaps Wishneski is referring to the order of reference (Doc. 69), which was entered the day before his request for an extension was filed. The order states the general rule that objections must be filed within ten days of the PFRD.

4

arguably qualify as an actual injury under the *Lewis* standard. He points out that most of the defendants listed on his original complaint were dismissed from this action because the complaint did not allege their personal involvement in the constitutional violations. He asserts that if he had access to legal materials he would have avoided this fate. The Court's memorandum opinion and order explained that to succeed on a § 1983 claim, a plaintiff must allege that the defendant was personally involved in the constitutional violation. (Doc. 18.) In subsequent motions, Wishneski attempted to show that certain defendants were personally involved. As a result, the magistrate judge recommended that one of the previously dismissed defendants be reinstated as a defendant. The Court will adopt this recommendation and, as discussed below, the Court will also reinstate other defendants because Wishneski has now alleged their personal involvement in the constitutional violations. Therefore, Wishneski was not actually injured by his lack of access to legal materials. His objections are overruled.

Next, Wishneski contends that the magistrate judge misunderstood his complaint regarding loss of his recreation privileges. In one of his motions, Wishneski alleged that he was denied his recreation privileges on three occasions for passing legal work to other inmates, based on an unwritten rule that inmates in administrative segregation cannot pass anything to each other. (Doc. 55.) The magistrate judge determined that this did not state a claim for relief because Wishneski does not have a protected interest in providing legal representation to other inmates. (Doc. 64 at 13.) Wishneski now contends that he is not asserting a liberty interest in passing legal work to other inmates, but that he is asserting a liberty interest in "keeping [his] recreation privileges for doing so." (Doc. 75 at 6.) This contention does not change the analysis. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (rejecting complaint that prisoner was placed in segregation in

5

retaliation for his advocacy efforts on behalf of other inmates because the prisoner did not have a protected interest in providing legal representation to other inmates). Wishneski's objection is overruled.

Wishneski also alleged in one of his motions that he was placed in administrative segregation on August 27, 2008 without a hearing, in violation of his right to due process and in retaliation for filing suits. (Doc. 50.) The magistrate judge determined that Wishneski's allegations stated a claim for retaliation but not a claim for denial of due process. (Doc. 64 at 10-11.) The magistrate judge pointed out that Wishneski had been in administrative segregation for fewer than seven weeks, and Wishneski did not explain how the conditions in segregation were atypical and significant as compared with the conditions of other inmates. (*Id.*) The magistrate judge noted, however, that Wishneski should not be precluded from filing a supplemental complaint including this due process claim if it contained adequate factual allegations. (*Id.* at 11 n.9.)

Wishneski has now provided adequate factual allegations. Wishneski was in administrative segregation for at least two months. He alleges that he was confined to a 6-by-12 cell for 24 hours a day, except that he was permitted to leave his cell for one hour every other day to shower and make phone calls. While in administrative segregation, he had no interaction with other inmates. In contrast, general population inmates are allowed to move throughout the facility without being shackled, are allowed to attend religious services and rehabilitation programs, and are allowed outdoor recreation three times per week. These allegations are sufficient to state a due process claim. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (indicating that prisoner's allegations that he was unable to leave his cell and work, take art classes, or mingle with other

prisoners for 75 days were sufficient to state a claim). Wishneski's complaint is deemed supplemented to include this claim.

Wishneski objects to the magistrate judge's determination that Detention Center officials do not violate the Constitution by making detainees turn and face the wall. The magistrate judge's determination was correct; therefore, this objection is overruled.

Next, Wishneski asserts that he is being denied access to trial transcripts. He believes that he needs the transcripts to pursue a *pro se* appeal of his conviction. The magistrate judge thought he wanted the transcripts for his habeas case. Nevertheless, Wishneski's objection is not well-taken. A transcript is not required for an appeal in New Mexico unless the appellate court places the appeal on the general calendar. *See* Rule 12-210, NMRA. Assuming an appeal has been filed in Wishneski's case, there is no indication that it has been placed on the general calendar.

Wishneski also objects to the magistrate judge's reliance on certain notations in his medical records. The PFRD states:

> The medical orders in Wishneski's chart contain the following notation by Dr. Rosales on February 7, 2008: "Do not crush meds; if pt caught cheeking meds again I will D/C some or all medications." (Doc. 29 Ex. T.) An April 6, 2008 notation by Dr. Rosales states, "D/C Morphine, pt selling medication." (*Id.*) I also note that on January 2, 2008 Dr. Watson stated his impression that Wishneski had "exaggerated symptoms." (*Id.* Ex. L.)

(Doc. 64 at 20.) Wishneski now denies under penalty of perjury that he "cheeked" or sold his medication. He further points out that Dr. Watson injected him with serious medicine, indicated that he may be a candidate for surgery, ordered physical therapy for him, and recommended follow-up visits. Wishneski suggests that none of these actions would have been taken if he were exaggerating his symptoms.

I will not rely on the statements quoted above from the PFRD. However, the statements were made in the context of determining whether Wishneski was entitled to a temporary injunction requiring the Detention Center to resume providing him with morphine. Because of his transfer, the motion for a temporary injunction is moot. *See supra*, at 3-4. The motion will be denied on that ground.

In his motion for a temporary injunction, Wishneski additionally complained about Orr Wittman's termination of his physical therapy. The magistrate judge recommended that the Court deny an injunction requiring resumption of the physical therapy. This recommendation was based in part on the magistrate judge's conclusion that Wishneski would not be substantially likely to prevail on the merits of a deliberate indifference claim for termination of the physical therapy. Noting that Orr Wittman replaced the exercises recommended by Dr. Watson with different exercises, the magistrate judge stated, "Although Wishneski believes the exercises prescribed by Dr. Watson were better, this belief is insufficient to establish deliberate indifference." (Doc. 64 at 18.)

In his objections, Wishneski contends that he has a valid claim against Orr Wittman for deliberate indifference. He states that "the only reason she discontinued my . . . exercises is because she felt that my being in medical doing my therapy while other inmates were being seen was an infringement on their right to privacy." (Doc. 75 at 15.)

As discussed above, Wishneski's transfer to state prison renders his motion for a temporary injunction moot. To the extent that Wishneski is attempting to supplement his complaint to add a deliberate indifference claim against Orr Wittman for terminating his physical therapy, the Court will deny such supplementation. The magistrate judge correctly determined that a mere disagreement regarding treatment is insufficient to constitute deliberate indifference. Likewise, the

8

fact that Orr Wittman changed Wishneski's therapy in an effort to balance his treatment needs with the treatment needs of other inmates does not equate with deliberate indifference. *Cf. Bartlett v. Pearson*, 406 F. Supp. 2d 626, 631-33 (E.D. Va. 2005) (holding that prison officials were not deliberately indifferent in exposing prisoner to environmental tobacco smoke as a result of overcrowding).

Wishneski next quarrels with the magistrate judge's treatment of his witchcraft allegation. As explained by the magistrate judge, Orr Wittman attempted to treat Wishneski's pain with a non-touch Japanese technique called "Seimer." The Defendants claim that the treatment consisted only of Orr Wittman making gestures over Wishneski's body. Wishneski claims that Orr Wittman chanted to a supernatural entity, which was contrary to his Christian religious beliefs. (Doc. 64 at 21 n.14.)

The magistrate judge stated:

> It is undisputed that the unconventional medical technique was performed on Wishneski only one time and only by Orr Wittman. It is also undisputed that Orr Wittman no longer works at the Detention Center. Wishneski does not contend that Orr Wittman performed the technique after he refused to consent to it. Instead, he admits that he consented to the technique, but contends that Orr Wittman did not fully explain what it entailed. Now that he understands what it entails, presumably he will not consent to it again if another medical provider suggests it. Given that Orr Wittman is no longer at the Detention Center, and that Wishneski is not currently being subjected to the technique against his will, I conclude that his request to enjoin performance of the technique on him is moot.

(Doc. 64 at 21-22 (footnote omitted).)

Wishneski now states that he is "highly offended" by the magistrate judge's comment that the technique was performed on him "only one time." (Doc. 75 at 25.) He accuses the magistrate judge of treating the incident "as no big deal" and states that to him the incident is "a huge deal" because it "put [his] soul in jeopardy." (*Id.* at 25-26.)

9

Because Wishneski only raised the witchcraft allegation in his motion for a temporary injunction, the sole question before the magistrate judge regarding this issue was whether performance of the technique should be enjoined. The magistrate judge correctly determined that the request for an injunction was moot because there was no ongoing threat that Wishenski would be subjected to the technique again.

It appears that Wishneski is now seeking to hold Orr Wittman liable for violating his rights by performing the technique on him. His allegations, however, are insufficient to state a First Amendment claim. His allegations make clear that Wishneski was not forced into having the technique performed upon him. *See Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996) (holding that one element of Establishment Clause claim is whether government's action amounts to coercion). Moreover, Wishneski does not allege any facts to indicate that Orr Wittman should have known that he would find the technique objectionable. *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (dismissing the plaintiff's First Amendment claim where the plaintiff could provide no evidence that he informed prison officials of his religious beliefs); *Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995) (holding that the defendants were not liable for negligent violations of the plaintiff's free exercise rights where the failure to accommodate the plaintiff's religious belief resulted from a misunderstanding), *aff'd*, 161 F.3d 3 (4th Cir. 1998) (table); *Rayes v. Eggars*, 838 F. Supp. 1372, 1378 (D. Neb. 1993) (rejecting free exercise claim because plaintiff never informed defendants that consuming food containing meat violated his religious beliefs), *aff'd*, 36 F.3d 1100 (8th Cir. 1994) (table). In fact, Wishneski's booking report lists his religion as "no preference." (Doc. 29 Ex. A.);

*see Hall v. Bellmon*, 935 F.2d 1106, 1109, 1112-13 (10th Cir. 1991) (allowing use of *Martinez* report in determining whether complaint should be dismissed).[3]

In addition to raising objections to the PFRD, Wishneski also seeks to add claims to his complaint. The magistrate judge recommended that Wishneski be allowed to supplement or amend his complaint to add a failure to protect claim against Officer Reyes and Lieutenant Mandoza, a retaliation claim against Lieutenant Porter, and deliberate indifference claims against Jose Rosales, Dr. Carp, and Dot Smith. Wishneski reiterates these claims. He also alleges that Officer McDonald participated in the decision to transfer him to the violent pod where he was attacked. He alleges that the following officials prevented him from receiving his physical therapy: Officer Shelly Ramos, Officer De la Torre, Officer Hernandez, Officer Romero (female), Officer Grace Giron, Officer Gerber, Officer Infante, Lieutenant Devilbliss, Sergeant Gamez, Dr. Giardo, Nurse Janet Olona, and Peni Rene. He alleges that Olona also administered Tylenol to him although this medicine is contraindicated in patients with hepatitis C and that Rene also prevented him from receiving timely treatment for an infection in his penis. The Court will allow these claims to proceed.

## III. CONCLUSION

Except to the extent noted above, the magistrate judge's PFRD is adopted as an order of the Court. For the reasons explained herein and in the PFRD, **IT IS ORDERED** that:

1) Wishneski's Motion for Immediate Temporary Injunction (Doc. 17), Request for Injunction Based on Non-Compliance (Doc. 26), Motion for Order of Judgement Based on Non-Compliance (Doc. 38), Motion in Objection to Time Extension (Doc. 39), Motion Requesting

---

[3] I also note that Wishneski did not raise any objection to the technique on religious grounds in his motion for a temporary injunction. (*See* Doc. 17.) He first mentioned his religious beliefs in his response to the *Martinez* report. (*See* Doc. 47 at 8-9.)

11

Hearing Due to Overwhelming New Evidence (Doc. 43), Motion Asking for Emergency Relief (Doc. 46), Motion for Immediate Injunction and Addendum to Complaint (Doc. 55), and Motion for Court Ordered Relief Based on Non-Compliance of Doctors Orders (Doc. 65) are **DENIED**;

2) Wishneski's complaint is deemed amended or supplemented to include the following claims—

A) a failure to protect claim against Officer Reyes, Officer McDonald, and Lieutenant Mandoza,

B) a deliberate indifference claim against Jose Rosales, Dr. Carp, Dot Smith, Officer Shelly Ramos, Officer De la Torre, Officer Hernandez, Officer Romero (female), Officer Grace Giron, Officer Gerber, Officer Infante, Lieutenant Devilbliss, Sergeant Gamez, Dr. Giardo, Nurse Janet Olona, and Peni Rene,

C) a retaliation claim against Lieutenant Porter, and

D) a due process claim against Lieutenant Porter and Doña Ana County (regarding Wishneski's placement in administrative segregation); and

3) in all other respects, Wishneski's Emergency Motion for Injunctive Relief (Doc. 50), Motion for Immediate Hearing Concerning Injunctive Relief for Further Discontinuation of Medication and a Addendum to the Original Complaint for Further Allegations, and, Amended Relief (Doc. 51), and Motion for Immediate Injunction (Doc. 63) are **DENIED**.

**IT IS FURTHER ORDERED** that Orr Wittman's Motion for Dismissal Without Prejudice or, In the Alternative, For Stay of Proceedings (Doc. 36) is **DENIED**.  However, because the only allegations against her were made in the motion for a temporary injunction, which is now moot, Orr Wittman is dismissed as a defendant.

**IT IS FURTHER ORDERED** that the Clerk is directed to reinstate Officer De la Torre, Officer Grace Giron, Officer Infante, Officer McDonald, and Officer Gerber as Defendants; to add Officer Reyes, Lieutenant Mandoza, Jose Rosales, Dr. Carp, Dot Smith, Officer Shelly Ramos, Officer Hernandez, Officer Romero (female), Lieutenant Devilbliss, Sergeant Gamez, Dr. Giardo, Nurse Janet Olona, Peni Rene, and Lieutenant Porter as Defendants; and to issue notice and waiver of service forms, with copies of Document 1, Document 75, and this Memorandum Opinion and Order, to all of the Defendants listed in this paragraph.

SO ORDERED this 3rd day of December, 2008.

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE