**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHNATHAN D. WISHNESKI,

Plaintiff,

v. CV 08-0348 MCA/WPL

DOÑA ANA COUNTY, et al.,

Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Johnathan D. Wishneski has filed a Motion to Compel, in which he requests that the Defendants be ordered to provide several pieces of information which he claims were denied in the discovery process. (Doc. 345.) The Defendants presented some initial objections related to the late filing of the Motion and responded to each of Wishneski's arguments (Doc. 348), and Wishneski replied (Doc. 363). Wishneski later filed an additional letter addressing alleged discovery violations and unethical tactics by defense counsel. (Doc. 354 at 9-18.) The Defendants responded. (Doc. 357 at 1-5.)

The remaining three claims in this case arise from Wishneski's incarceration in the Doña Ana County Detention Center ("DACDC"). Throughout the long history of this case, Wishneski has proceeded *pro se* and *in forma pauperis*. I recognize the additional burdens that a *pro se* litigant faces during discovery, which can be a complex procedural process. I have noted that the parties have rarely required my intervention in the discovery process, and I appreciate the lengths to which the Defendants have gone in order to make discovery in this case run smoothly. After consideration

of the pleadings and the relevant law, the Motion to Compel is granted as to one request for production but otherwise denied.

I. *Defendants' Initial Objections:*

The Defendants have asserted as defenses to this Motion to Compel that Wishneski failed to file the Motion within twenty-one days of most responses and that Wishneski failed to confer with the Defendants before filing the Motion. Generally, if a party receives incomplete responses or responses containing objections, that party must move to compel supplemental responses within twenty-one days or accept the responses as provided. D.N.M.LR-Civ. 26.6. Moreover, the Federal Rules of Civil Procedure require that a party attempt in good faith to resolve discovery disputes with the opposing party prior to filing a motion with the court. FED. R. CIV. P. 37(a)(1).

In this case, Wishneski is incarcerated and proceeding *pro se*. Generally, the pleadings of *pro se* litigants are liberally interpreted. *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011). However, *pro se* litigants are required to adhere to "the same rules of procedure that govern other litigants." *Shrader v. Biddinger*, 633 F.3d 1235, 1249 n. 9 (10th Cir. 2011) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). The court possesses discretion to consider untimely pleadings where the failure to timely file was the result of excusable neglect. *See* FED. R. CIV. P. 6(b); *Quigley v. Rosenthal*, 427 F.3d 1232, 1237-38 (10th Cir. 2005); *LaBow v. C.I.R.*, 763 F.2d 125, 129-30 (2d Cir. 1985).

Here, Wishneski explained that his Motion to Compel was not timely because he does not have access to the local rules and so was not aware of the twenty-one day deadline. (Doc. 363 at 1.) My Scheduling Order explicitly states, with regard to the deadline for discovery motions, "This deadline shall not be construed to extend the twenty-one-day time limit in D.N.M.LR-Civ. 26.6." (Doc. 284 at 2-3.) This should have alerted Wishneski to the possibility that a time limit for filing

motions to compel might exist.

However, Wishneski stated that the facility where he is incarcerated does not have a copy of the local rules. In addition, he requested that counsel be appointed to represent him once this case proceeded to the discovery phase. Recognizing the potential complexity of discovery for a *pro se*, incarcerated litigant, I referred the case to the Pro Bono Committee, but the Committee voted against referring the case to the pro bono panel. (Doc. 286.) Because Wishneski requested counsel and counsel was not appointed and because Wishneski did not have access to the local rules, I will not rely on the procedural time limit established by D.N.M.LR-Civ. 26.6 to preclude Wishneski's Motion to Compel. Instead, I will exercise my discretion to consider the merits of the Motion.

II. *Legal Standards:*

A party is entitled to seek discovery as to "any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevant information need not be admissible at trial, but it must be reasonably calculated to lead to admissible evidence. *Id.* Responses must be provided to each propounded interrogatory and request for production, and any objections must be made with specificity. FED. R. CIV. P. 33(b); FED. R. CIV. P. 34(b)(2). The responding party is generally required to furnish any responsive information that is available "through reasonable efforts." *Dean v. New Werner Holding Co., Inc.*, No. 07-2534-JAR-GLR, 2008 WL 2560707, at *3 (D. Kan. June 26, 2008) (quoting *Schartz v. Unified Sch. Dist. No. 512*, No. 95-2491-EEO, 1996 WL 741384, at *3 (D. Kan. Dec. 18, 1996)).

When a party files a motion to compel, that party bears the burden of proving that the opposing party's answers are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 227 (10th Cir. 1976); *Equal Rights Ctr. v. Post Props.*, 246 F.R.D. 29, 32 (D.D.C. 2007)). The moving party also

bears the burden of demonstrating the relevance of his discovery requests if relevance is not facially apparent. *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996) (citation omitted). Thus, Wishneski must prove that the Defendants failed to completely answer his discovery requests and that his requests are relevant where relevance is not readily apparent. On the other hand, when a party objects to interrogatories or requests for production, the party resisting discovery bears the burden of supporting its objections. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007) (citing *Swackhammer v. Sprint Corp., PCS*, 225 F.R.D. 658, 661-62 (D. Kan. 2004)). Thus, the Defendants must prove that their objections to Wishneski's discovery requests are valid.

Prior to reaching the individual discovery requests, I note that a conclusory assertion that requested discovery exists despite the opposing party's contention to the contrary is insufficient to carry the burden in a motion to compel. *Woltz v. United States*, Nos. 3:08CV438-1, 3:06CR74, 2010 WL 138121, at *2 (W.D.N.C. Jan. 7, 2010); *United States v. Rindt*, No. 04-40086-SAC, 2004 WL 3037965, at *2 (D. Kan. Dec. 8, 2004). Many of Wishneski's complaints in this Motion to Compel are based on subjective statements that the requested documents or other evidence that was not provided must exist. Such a conclusory statement of subjective belief is not sufficient to demonstrate that the Defendants actually possess the documents, and it certainly is not sufficient to support an order that the documents be produced.

III. *Defendant Porter:*

a. First Set of Interrogatories, No. 1:

Wishneski seeks Porter's current residential address, his residential addresses for the past ten years, his social security number, his marital status and his date and place of birth. (Doc. 345 Ex. 1A.) Porter objected to the interrogatory on the basis that any information aside from his name and

work address are protected by his constitutional right to privacy. (*Id.*) In his response, Porter asserts that a corrections officer has a basic right to privacy from invasive discovery due to privacy and security concerns. (Doc. 348 at 5.) Porter cites to *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435-38 (10th Cir. 1981), and *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989), to support that, absent a showing of need, relevance and materiality, such information is protected. (*Id.*) Porter argues that Wishneski has made no showing that his need for Porter's social security number, home address, date of birth, and other personally identifiable information outweighs Porter's legitimate privacy concerns. (*Id.* at 5-6.) In reply, Wishneski contends that this information will reveal how Porter will be able to satisfy a judgment. (Doc. 363 at 2.)

Federal courts recognize a general right to privacy. *Bernat v. City of California City*, No. 1:10-cv-00305, 2010 WL 4008361, at *6 (E.D. Cal. Oct. 12, 2010). Where a party claims a right to privacy in certain information, the court must consider: "(1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Denver Policeman's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir. 1981) (citation omitted). In *Bernat*, the plaintiff requested job applications and background histories of specified officers to support his lawsuit against the City of California, and the City objected on the basis that the documents contained personal information. *Bernat*, No. 1:10-cv-00305, 2010 WL 4008361, at *7 (E.D. Cal. Oct. 12, 2010). The court held that the plaintiff was not entitled to personal information including social security numbers, home addresses, dates of birth, family information, and any other personal identifiers except for the officers' names. *Id.*; *see also Collens v. City of New York*, 222 F.R.D. 249, 253-55 (S.D.N.Y. 2004) (holding that an officer's home address sought for purposes of investigating her ability to pay

punitive damages was not discoverable). After considering the relevant factors, I conclude that Porter has a legitimate expectation of privacy in the personal information sought by Wishneski and that the information is irrelevant to Porter's ability to satisfy a judgment. Thus, the Motion to Compel this information is denied.

b. First Set of Interrogatories, No. 6:

Wishneski seeks information regarding whether Porter has been the subject of any civil or criminal court action and whether he has been the subject of employer disciplinary action; if so, Wishneski seeks the details of these actions. (Doc. 345 Ex. 1B.) Porter objected on the bases of relevance and the right to privacy. (*Id.*) Porter did reveal that he has no criminal history. *Id.*

Wishneski focuses his arguments in his Motion to Compel on the production of Porter's personnel file and records regarding disciplinary actions. Because Wishneski's arguments are addressed to the production of documents, this information is not properly sought through an interrogatory. Thus, his arguments and Porter's objections are addressed below. *See infra*, pp. 7-8.

c. First Set of Interrogatories, No. 7:

Wishneski has alleged that he had a conversation with Sergeant Burns during which Sergeant Burns looked at a computer screen and told Wishneski that he was placed in segregation "per Lieutenant Porter." (Doc. 345 Ex. 1C.) Wishneski seeks additional information from Porter about that computer screen. (*Id.*) Porter stated that the interrogatory was objectionable because it assumed facts not in the record. (*Id.*) However, he also stated that he believes "the notation in the JCORR system was in reference to my decision to move Plaintiff to the Fox unit for his safety." (*Id.*) Wishneski argues that he was given a document as part of his file that stated "per Lt. Porter," but that there was "no notation below . . . ." (*Id.* at post-it note; *see also* Doc. 345 Ex. 1D.) He asks why this would be in his file. (Doc. 345 Ex. 1C at post-it note.) In response, Porter asserts that he

answered the portion of the interrogatory regarding the exhibit with the "Per Lt. Porter" statement. (Doc. 348 at 7.)

It is not clear to me what Wishneski is requesting in his Motion. He was provided with the relevant document, and Porter provided an answer of his belief as to what the JCORR notation meant. As previously explained, Wishneski's subjective belief that Porter possesses additional information related to this interrogatory is insufficient to support a motion to compel. The interrogatory was answered, and so the Motion to Compel as to this interrogatory is denied.

d. First Set of Requests for Production, No. 6:

Wishneski requested a copy of Porter's institutional personnel file. (Doc. 345 Ex. 2J.) Porter objected on the basis that the information is personal, sensitive, and irrelevant to Wishneski's claims. (*Id.*) Porter asserted that the information is irrelevant because Wishneski did not raise claims based on failure to train or to discipline. (*Id.* (citing *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).) Porter also objected that the request was not limited in time or scope. (*Id.*) Finally, he stated that police officers have an expectation of privacy in their personal matters. (*Id.* (citing *Lichtenstein*, 660 F.2d at 435)). Wishneski asserts that any demonstrated behavior problems would support his retaliation claim. *Id.*

Relevance is a broad standard. The Defendants contend that Porter's personnel file is not relevant to Wishneski's legal claims. Though not required to satisfy an element of his claim, information about any past bad acts by Porter could help to prove "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." FED. R. EVID. 404(b). Additionally, such information could be relevant to Porter's credibility or used for impeachment purposes. FED. R. EVID. 608. Furthermore, cases considering the relevance of personnel files have concluded that "an individual's personnel file is relevant and/or reasonably

calculated to lead to the discovery of admissible evidence, and therefor discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or played an important role in the decision that gives rise to the lawsuit." *Auguste v. Alderden*, No. 03-cv-02256-WYD-KLM, 2008 WL 3211283, at *10 (D. Colo. Aug. 6, 2008) (quoting *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217, at *3 (D. Kan. Feb. 11, 2008)). Here, Wishneski has alleged that Porter engaged in retaliation against him, thus meeting the test for relevance. Porter's relevancy objection is overruled.

To evaluate the merit of Porter's claim of privacy, I must determine whether Porter has a legitimate expectation of privacy in his personnel file, whether disclosure serves a compelling interest, and whether disclosure is requested through the least intrusive means. *Lichtenstein*, 660 F.2d at 435. Though Porter has failed to state a basis for his privacy interest, personnel files are generally considered private, though the privacy interest is not boundless. *Carter v. Carlsbad*, 2011 WL 669227 at *5 (S.D. Cal. Feb. 15, 2011). Here, though, I find that Wishneski's need for some records possibly included in the personnel file outweigh Porter's privacy interest. *See id.* (holding that, where the plaintiff brought a § 1983 suit alleging excessive force, the plaintiff's interest in some documents contained in the police officer's personnel file outweighed the officer's privacy interest). However, to obtain the relevant information by the least intrusive needs, I will not order the production of Porter's entire personnel file. Instead, I order Porter to produce any portion of his personnel file related to complaints against or discipline of Porter based on alleged retaliation against inmates. The Motion to Compel is granted as to this request for production.

IV. *Defendant Doña Ana County:*

Wishneski contests the answers or responses by the County to several of his interrogatories and requests for production. The sole claim that remained pending against Doña Ana County when

these discovery requests were served was a claim that Wishneski was unlawfully limited to video visitation. Because Wishneski did not feel that he could provide discovery that I deemed was required for him to proceed with this claim (*see* Doc. 333), he requested the Court's permission to withdraw the visitation claim. (Doc. 339.) The Court granted the motion and dismissed his claim against Doña Ana County. (Doc. 365.)

While Doña Ana County remains listed as a Defendant, there are no pending claims against it. Thus, discovery is only available from Doña Ana County through deposition or subpoena. *See* FED. R. CIV. P. 30(a) & 45. Interrogatories and requests for production, like those at issue in this Motion to Compel, may only be served on parties. *See* FED. R. CIV. P. 33 & 34. Wishneski's interrogatories and requests for production were served on Doña Ana County while it was still a Defendant. However, because Wishneski no longer has pending claims against Doña Ana County, further discovery is not available against it. *See, e.g.*, *Solomon v. Michigan State Police*, No. 1:08-cv-858, 2010 WL 3475730, at *2 (W.D. Mich. Sept. 2, 2010) ("[P]laintiff cannot seek to compel discovery directed against former defendants and non-parties . . . ."); *Ward v. Empire Vision Ctrs., Inc.*, 262 F.R.D. 256, 261 (W.D.N.Y. 2009) (holding that service of interrogatories on a non-party is inappropriate). Thus, I cannot order Doña Ana County to respond to Wishneski's discovery requests. Wishneski's Motion to Compel as to Doña Ana County is denied.

V. *Defendant Reyes:*

a. First Set of Requests for Production, No. 2:

Wishneski requested "the names, charge, classification status, and known gang affiliation of all inmates housed in D-4 while the Plaintiff was housed in D-4." (Doc. 345 Ex. 4B.) Reyes objected to this request as unduly burdensome but further stated that he does not possess the requested information. (*Id.*) Wishneski argues that the information is relevant to his failure to protect

claim and that "DACDC has all 'known gang affiliations.'" (*Id.* at post-it note.) Reyes states that he stands by his answer and does not know or possess all histories of all inmates housed in Unit D-4 during the relevant period. (Doc. 348 at 17.) He further notes that Doña Ana County provided Wishneski with a list of inmates from the time that Wishneski was housed in Unit D-4 that included their classifications. (*Id.*)

While Wishneski may feel that the information sought is important and relevant, Reyes responded fully to his request for production by stating that he does not possess the requested histories. The Motion to Compel the production of this information is therefore denied.

b. First Set of Interrogatories, No. 9:

Wishneski asked Reyes to describe in detail the policy surrounding the receipt of "kites." (Doc. 345 Ex. 4E.) He further requested that Reyes "provide copies of all 'kites' given to classification between Jan[uary] 1, [20]08 and July 1, 2008." (*Id.*) Reyes responded that he is "not in possession of any such kites, but please see Responses of the County Defendant if they can be located." (*Id.*) Wishneski argues that the kites were not provided and that they would show knowledge. (*Id.* at post-it note.) Reyes stands by his answer that he does not have the kites and that he only has a general idea about how kites are handled. (Doc. 348 at 17.)

Again, Reyes answered Wishneski's interrogatory by providing his knowledge of the procedure for handling kites and by stating that he does not possess any kites. The Motion to Compel this answer is denied.

VI. *Request for Production of the "Per Lt. Porter . . . available screens . . . .":*

Wishneski has repeatedly sought the screens that Sergeant Burns would have accessed to determine the reason that he was placed in segregation. (Doc. 345 at 2.) He contends that the defense deliberately quoted the text of an interrogatory about Dot Smith rather than the text of the

interrogatory that he intended. (*Id.*)

Wishneski has served the Defendants with several sets of interrogatories and requests for production, and he did not indicate which set he was referring to when he directed the Defendants to produce the screens related to Interrogatory No. 4. Any confusion by the Defendants was therefore understandable. Moreover, the Defendants not only cited to the Dot Smith interrogatory but also responded that there were no screens related to his placement in segregation other than that which was already provided. This portion of Wishneski's Motion to Compel is denied.

VII. *Interrogatories at Exhibits 4A-4F:*

These exhibits consist of Officer Reyes' Responses to Wishneski's First Set of Requests for Production of Documents and to Wishneski's First Set of Interrogatories. In the responses, Reyes objected to three requests for production as unduly burdensome, stated that he does not possess the requested information, and further stated that the Doña Ana County will provide the requested information if it can be obtained. (Doc. 345 Exs. 4A-4B.) In response to a fourth request for production, Reyes stated that the documents have already been provided. (Doc. 345 Ex. 4C.) In response to an interrogatory asking about the policy regarding "kites", Reyes stated that he does not have any kites and explained his understanding of what happens with a kite. (Doc. 345 Ex. 4E.) Finally, in response to Wishneski's interrogatory regarding the lock-downs of Pod D-4, Reyes objected based on lack of personal knowledge and memory of all events in the requested period. (Doc. 345 Ex. 4F.) Wishneski asserts that the Defendants did not fully answer these interrogatories and were "EXTREMELY evasive . . . ." (Doc. 345 at 3 (emphasis in original).)

Rather than demonstrating evasiveness by the Defendants, the responses to these discovery requests demonstrate that Wishneski asked Reyes for a great deal of information that he did not have. Reyes did respond as he was able and further referred Wishneski to Doña Ana County's

responses. Thus, these responses do not evidence bad faith or a failure to respond.

VIII. *Deposition of Officer Walters:*

Wishneski states that he was denied a deposition of Officer Walters, who Wishneski claims "would be key" to proving his claim of retaliation. (Doc. 345 at 3.) The Defendants contend that Officer Walters is no longer a DACDC employee and that they do not have current contact information for him. (Doc. 348 at 2.) They provided Wishneski with that information and with Officer Walters' last known address in their Second Supplemental Initial Disclosures. (*Id.*; Doc. 348 Ex. 4 at 1-2.) Wishneski asserts his disbelief that a previous officer "could just fall off the face of the earth and not be located" and emphasizes the importance of this witness. (Doc. 363 at 2; *see also* Doc. 345 at 3.)

Though Wishneski finds it hard to believe, the Defendants have stated that, despite several attempts, they have not been able to locate Officer Walters. The Defendants have no duty to keep track of former employees, though they have attempted to find him at Wishneski's request. I decline to force the Defendants to expend vast resources attempting to locate one of Wishneski's witnesses who is no longer a DACDC employee, regardless of his importance.

IX. *Depositions of Eva Delgado and Sherry Pendard:*

In their disclosures, the Defendants identified Eva Delgado and Sherry Pendard as witnesses and stated that their "[c]urrent address and phone number [are] unknown." (Doc. 345 Ex. 5, 6.) In his Motion, Wishneski argues that "[t]he defense should be ordered to provide these witnesses . . . ." (Doc. 345 at 3.) The Defendants state that they do not have current addresses or phone numbers for either of these witnesses. (Doc. 348 at 2.) Additionally, attempts to contact these witnesses through their counsel were unsuccessful. (Doc. 348 at 3; Doc. 348 Ex. 5 at 13:20-25, 14:1-12.)

The Defendants are only required to provide contact information for witnesses in their initial

disclosures if such information is known. FED. R. CIV. P. 26(a)(1)(A)(i). They have asserted that they do not know how to contact Ms. Delgado or Ms. Pendard. Therefore, this aspect of the Motion to Compel is denied.

X. *Video Footage:*

Wishneski argues that all video footage from 2008 was deliberately withheld by the Defendants. (Doc. 345 at 3.) The Defendants state that any video footage from 2008 no longer exists. (Doc. 348 at 3.) The Defendants acknowledge that the video footage may constitute electronically stored information but contend that they had no way of knowing to preserve every frame of video at DACDC in which Wishneski appeared. (*Id.* at 10 n. 4.) They explain that DACDC closed-circuit video footage is ordinarily retained for between thirty and forty-five days. (*Id.* at 10.) They further state that, though some of the requested video footage took place after Wishneski filed suit, none of Wishneski's pleadings mentioned a possible need for video footage or sought video footage. (*Id.* at 10 n. 4.) In reply, Wishneski asserts that it is a fact that the "JCORR" digital system records information forever. (Doc. 363 at 2.) As a result, he concludes that the footage is available somewhere despite the fact that the users may not know how to access it. (Doc. 363 at 2.)

Digital recording devices have limits, including limited storage space. The Defendants have explained that they electronically store video information for thirty to forty-five days in the regular course of business. I cannot order the production of video footage that is not available, and Wishneski has provided no objective reason to doubt the Defendants' assertion that the requested footage from three years ago no longer exists. This portion of the Motion to Compel is denied.

XI. *Exhibits of Wishneski's Interrogatories and Requests for Production:*

Wishneski provided several exhibits consisting of his hand-written interrogatories and requests for production. (See Doc. 345 Exs. 3C, 3D, 3G, 3H, 3I, O, P, Q, R, S, 3T, U & V.) On those

pages, he added post-it notes with various arguments about the reasons the information was necessary. However, I do not have before me the Defendants' responses to these interrogatories and requests for production. I understand that Plaintiff believes that his discovery requests were important and relevant, but I cannot order the Defendants to produce something that may have already been produced. Therefore, I deny the Motion to Compel as to Exhibits 3C, 3D, 3G, 3H, 3I, O, P, Q, R, S, 3T, U and V.

XII. *Sanctions:*

Wishneski requests that sanctions be imposed, alleging that the Defendants "deliberately withheld discoverable information . . . ." (Doc. 345 at 3.) He adds that "defense has been elusive, evasive, and has not returned one set of discovery requests in the time allotted under the Rules." (*Id.* at 4.) Wishneski states that he felt taken advantage of throughout the discovery process. (*Id.*) He claims that his inexperience, lack of training, and lack of knowledge have "been exploited by" defense counsel "at <u>every</u> turn." (Doc. 354 at 13-14 (emphasis in original).)

In response to these allegations, the Defendants describe the complexity of the discovery in this case. (Doc. 348 at 1; Doc. 357 at 2.) They correctly state that this case has been ongoing for three years and has generated "a mountain of paper." (Doc. 345 at 1.) They specify that within the past six months, they have produced roughly 2,000 pages of material. (Doc. 348 at 1, Ex. 1 at 2-5.) Further, they point out that they "have facilitated every deposition requested by Plaintiff and made available all witnesses sought by Plaintiff for Plaintiff to depose via phone, some of whom are not County employees." (Doc. 348 at 1.) They state that they have also coordinated conference calls and court reporters for Wishneski's benefit. (Doc. 357 at 2.) The Defendants urge that they "have made every effort to respond to each and every discovery request by Plaintiff and have provided a vast amount of information to Plaintiff without seeking even the cost of reproduction." (Doc. 348 at 3.)

In order to impose sanctions, the party moving for sanctions must demonstrate that the opposing party committed some misconduct in the discovery process that was not substantially justified.[1] *See* FED. R. CIV. P. 37; *Adams v. Goodyear Tire & Rubber Co.*, No. 99-4159-SAC, 2000 WL 1863371, at *1 (D. Kan. Nov. 9, 2000). Wishneski has levied several accusations against defense counsel that he contends demonstrate the Defendants' misconduct, and I will address each in turn.

First, Wishneski describes that Mr. Macke has provided four different copies of an approximately 500 page document and that each set has been rearranged; he alleges that the re-arrangement "has been intentionally done in an attempt to confuse this Plaintiff and provide him with literally mountains of paperwork to sift through." (Doc. 354 at 11.) Wishneski further states that the defense has worked from a different set of these documents at each deposition, which left him attempting to sift through the pages to find the document being referenced. (*Id.* at 11.) The Defendants state that they are also struggling to manage the large amount of documentation in this case; they state that the production of multiple copies was not intended the frustrate Wishneski's efforts but was done in an effort to comply with disclosure obligations. (Doc. 357 at 2.) The amount of documentation in this case would present a challenge to any person, and Wishneski's frustration is understandable. However, the defense has stated that the repeated production of documents was due to an effort to ensure that their discovery obligations were satisfied, and their conduct throughout this litigation supports that assertion. I find that the production of multiple sets of documents was not misconduct.

---

[1] The Defendants suggest that the standard for the imposition of any sanctions is bad faith or willful misconduct. (Doc. 348 at 4.) That is an incorrect statement of law; the heightened standard of bad faith must be met only where an extreme sanction such as the entry of default judgment is imposed. *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (quotation omitted).

Wishneski claims that further evidence of misconduct is the fact that the defense claimed witness Mary Crouch could not be found until he was called into his caseworker's office and told that the defense had produced Ms. Crouch for a deposition that day. (Doc. 354 at 12.) The Defendants state that they do not know why Wishneski was "caught off-guard . . . ." (Doc. 357 at 3.) As described by the defense, Wishneski's deposition notice did not indicate a time and place for the deposition. (Doc. 357 Ex. 5.) The defense also states that they tried to assist Wishneski during the deposition by making arrangements to fax Wishneski the documents that he needed. (Doc. 357 at 3.) While it would have been preferable for the defense to notify Wishneski in advance once they had located Ms. Crouch, they were under no obligation to advise him of the date of the deposition. Wishneski's other notices to take depositions indicated a time and date for the deposition, but the notice for Ms. Crouch's deposition did not. (*Compare* Doc. 357 Ex. 2 *with* Doc. 357 Ex. 5.) Thus, this does not evidence misconduct, and the defense's efforts to assist Wishneski (*see* Doc. 357 Ex. 4 at 7:21-25, 8:1-25, 9:1-15) point to the opposite conclusion.

Wishneski alleges that the defense has altered or changed his original, handwritten discovery requests when typing them. (Doc. 354 at 13.) The Defendants deny that they altered any discovery requests. (Doc. 357 at 4.) Without any tangible evidence of changes to the discovery requests, I cannot find that any discovery requests were altered.

Wishneski also alleges that defense counsel has, throughout depositions, motioned with their hands so that witnesses would not answer Wishneski's questions; he states that this is on the record of the deposition of Dr. Jarden. (Doc. 354 at 15.) The Defendants state that any hand gestures made were indications of a forthcoming objection. (Doc. 357 at 4.) While I do not encourage defense counsel to make these sorts of hand gestures during the course of depositions, I do not conclude that any hand gestures evidence misconduct sufficient to warrant the imposition of sanctions.

I conclude that the course of conduct by the defense in this case has been commendable, as they have gone far beyond their discovery obligations to enable a smooth discovery process without much need for my involvement. This lengthy case has led to the production of thousands of pages of documents and the taking of a number of depositions. The defense has facilitated Wishneski's access to those documents and has enabled him to take almost all desired depositions. Wishneski has expressed that the discovery process has been frustrating, and that is understandable. However, there is no basis for the imposition of sanctions against the Defendants. Wishneski's request for sanctions is denied.

XIII. *Conclusion:*

As described above, Wishneski's Motion to Compel is denied in its entirety but for one request for production. Porter is ordered to produce the relevant portions of his personnel file as described above, should any relevant portions exist, within seven (7) days of the entry of this Order. Wishneski's request for sanctions is denied.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served on the date of entry--via mail or electronic means--to counsel of record and any *pro se* party as they are shown on the Court's docket.